UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TABITHA J. WAGGONER, on behalf of P.O.V., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO. 3:17CV222-PPS/MGG ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Tabitha Waggoner, on behalf of P.O.V., a child under the age of 18, seeks judicial review of the Social Security Administration's decision denying P.O.V.'s application for Supplemental Security Income under Title XVI of the Social Security Act. An administrative law judge found that P.O.V. was not disabled within the meaning of the Social Security Act. For all of the reasons that follow, I will affirm the ALJ's decision.

### Background

The ALJ's decision contains a thorough review of the facts and medical evidence in this case, so I will not repeat them here. In denying P.O.V.'s application, the ALJ employed the three-step sequential evaluation process for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(a). First, the ALJ found that P.O.V. was not engaged in substantial gainful activity. *Id.* § 416.924(b). Second, the ALJ considered whether P.O.V.'s impairments were severe, i.e., they did not significantly limit her ability to

perform basic work activities. *Id.* § 416.924(c). At this step, the ALJ found that P.O.V. had several severe impairments, including suspected left-sided cerebral palsy, a mixed expressive-receptive language disorder, and chronic constipation with overflow. Third, the ALJ considered whether P.O.V.'s impairments met, medically equaled, or functionally equaled an impairment described in the children's Listings found in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* §§ 416.924(d), 416.925.

This last step is what is at issue in this appeal, and it required the ALJ to consider P.O.V.'s functioning in six domain areas: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. *Id.* § 416.926a(b)(1). "Marked" limitations in two of the six domains, or an "extreme" limitation in one domain, means that a child is disabled. *Id.* § 416.924a(d). The ALJ here found that P.O.V. did not have "marked" limitations in two domains and did not have an "extreme" limitation in any domain. Thus, the ALJ concluded that P.O.V. was not disabled.

## Discussion

Before diving into the arguments, let's start with some basics on what my role is in this process. It is not to determine from scratch whether or not P.O.V. is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012);

*Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). If substantial evidence supports the Commissioner's factual findings, they are conclusive. 42 U.S.C. §405(g). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Substantial evidence" is more than a "scintilla" of evidence, but it's less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). So the review is a light one. But of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Waggoner raises one issue that she says calls for remand. She claims that with respect to two functional domains – "Interacting and Relating with Others" and "Moving about and Manipulation of Objects" – the ALJ improperly relied upon the peak levels of P.O.V.'s improvement and thereby failed to acknowledge the periods leading up to those peak levels of improvement, which she says required more severe gradations. She argues that by focusing on only the period after improvement, the ALJ cherry-picked evidence toward the end of P.O.V.'s treatment regimen. Because, as Waggoner argues, the ALJ's determination is not an "all or nothing" inquiry, there was substantial evidence to support a finding of disability for at least part of the relevant time period.

Waggoner's first argument is that the ALJ erred in evaluating the Interacting and Relating with Others functional domain by analyzing only the period of time in which

3

P.O.V. had seen maximum improvement after speech and language therapy. According to Waggoner, P.O.V. reached this point of maximum improvement around January 2015, but in the period prior to this date – from the alleged onset date of October 11, 2012 until January 2015 – P.O.V.'s functioning in this domain was much worse, such that she had marked limitations.

The Interacting and Relating with Others domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of others. It relates to all aspects of social interaction at home, school, and the community. The domain also considers the speech and language skills that children need to speak intelligibly and to understand and use the language of their community. 20 C.F.R. § 416.926a(i). The Social Security Regulations provide myriad examples of limited functioning in this domain, but for our purposes, some relevant examples include difficulty communicating with others – for example, using verbal and nonverbal skills to express onself, carrying on a conversation, or asking others for assistance – and difficulty speaking intelligibly or with adequate fluency. *Id.* For preschool children (age 3 to 6), children should be able to socialize with children and adults, develop friendships with children their own age, use words to express themselves, and speak clearly enough that listeners can understand what they mean most of the time. *Id.* § 416.926a(i)(2)(iii).

The ALJ identified the proper standard and found that P.O.V. had a less than marked limitation in this domain. [A.R. at 24.] The ALJ cited evidence that P.O.V. suffered from articulation issues, which were confirmed by both a specialist and P.O.V.'s mother, but the ALJ also observed that several other pieces of evidence supported a less than marked limitation. For example, the ALJ noted that P.O.V. was cleared for kindergarten, no clinician found P.O.V. unintelligible, and P.O.V. was able to communicate at the hearing. In addition, the ALJ explained that P.O.V. had no evidence of behavioral abnormalities, P.O.V. was able to maintain appropriate eye contact with her examiners, P.O.V. reported that she had a group of friends, enjoyed school, and her parents reported that P.O.V. interacted appropriately with her siblings. [A.R. at 25.] The ALJ ultimately "agree[d] with the consultants' less than marked limitation' opinion." [*Id.*]

In conducting her analysis of the evidence, the ALJ relied on a significant amount of evidence from earlier time periods – not just the time immediately prior to, or from, the hearing. While it's true that some of the evidence cited by the ALJ was from what appears to be relatively close in time to the hearing or even from the hearing itself (P.O.V.'s own reports and ability to communicate at the hearing, for example), the ALJ also referred to important findings from examinations that predate what P.O.V. says was the point in time in which she saw significant improvement (up until January 2015).

The most notable piece of evidence is the ALJ's reference to the consultant's opinion that P.O.V. had a less than marked limitation in the Interacting and Relating

5

with Others domain. [A.R. at 25 ("the undersigned agrees with the consultants' 'less than marked limitation' opinion").] The ALJ had previously assigned it partial weight. [A.R. at 21-22.] The consultant opinion to which the ALJ referred is an opinion from August 19, 2013 in which the consultative examiner found that P.O.V. had a less than marked limitation in this particular domain. The examiner concluded that P.O.V.'s speech errors are "maturational" and that her speech imposes "a less than marked limitation." [A.R. at 86.] The report also indicated that P.O.V.'s mother had noted no problems interacting and relating to others and that P.O.V. was "very friendly ... with good social interactions and good eye contact." [A.R. at 87.] This is the examiner's report that ALJ was relying on, in part, in making her findings for this domain. And this evidence is from the period in which Waggoner claims P.O.V. demonstrated a marked limitation and almost a year and a half before Waggoner concedes that P.O.V. saw significant improvement.

There were other pieces of evidence that were mentioned by the ALJ. For example, the ALJ noted that P.O.V. was cleared for kindergarten in a general education class. Indeed, P.O.V.'s educational records show that P.O.V. was cleared for a general education kindergarten program in November 2014 by Sarah Skurow, SNAP Special Education Teacher. [A.R. at 315.] Importantly, this evidence is from before January 2015 – a period that Waggoner argues constituted a period of marked limitation. In addition, as the ALJ noted, no clinician had ever described P.O.V. as unintelligible – a statement

that suggests to me that the ALJ was considering evidence from the whole period, not just the later-in-time period.

In response to the substantial evidence recounted by the ALJ in her opinion, Waggoner's response is underwhelming. She identifies only *one piece* of evidence in support of her argument. She directs me to a report from P.O.V.'s school psychologist that P.O.V. exhibited a significant delay in her articulation and phonological skills. [A.R. at 477, 481.][1] But the ALJ appears to have considered this, albeit not in the section for her analysis of this domain. The ALJ in her credibility assessment explained that P.O.V. underwent an Individualized Education Program assessment for preschool development, in which it was noted that there were linguistic issues that, when combined with the left lower extremity issues, resulted in speech and physical therapy recommendations. [A.R. at 21.] And even if the ALJ should have considered this more thoroughly in her analysis of whether P.O.V. suffered a marked limitation, her failure to elaborate was at most a harmless error. That's because this one statement, made in P.O.V.'s Individualized Education Program initial evaluation, does not undermine the ALJ's conclusion. The report was compiled to assess P.O.V.'s needs in an educational setting [*see* A.R. at 482], not in the context of treatment or evaluating whether P.O.V. was disabled.

---

[1]Waggoner says that this statement in the report was made by the school psychologist, who is Gina Shepley. My reading of the report is different; it appears that the statement was made by the speech and language pathologist, Kim Trail. [A.R. at 477.]

7

In fact, the rest of the report paints a much different picture than the single sentence Waggoner has cherry picked from the report. For starters, the report indicates that P.O.V. performed well on the Preschool Language Scale-5 screening test. P.O.V. received "4/5 Passed" in the Language category, an 8/10 in Articulation, and she passed in three additional categories, Social/Interpersonal Skills, Stuttering, and Voice. [A.R. at 471.] Kim Trail, a speech and language pathologist, opined that P.O.V.'s receptive and expressive language skills, social and interpersonal skills, and fluency and voice were developmentally appropriate. [A.R. at 476.] She also stated that P.O.V.'s pragmatic/social language skills appeared to be age appropriate. [A.R. at 476.] And although the speech pathologist observed that P.O.V. suffered a significant delay in her articulation and phonological skills, as Waggoner claims, the pathologist also opined that P.O.V.'s speech was 50-75% intelligible depending on the listener's knowledge of context. [A.R. at 477.] Finally, the speech pathologist stated that P.O.V. "spoke as smoothly as her peers and used a voice that sounds like other children of the same age and gender." [A.R. at 477.] Based on this, it seems to me that it is P.O.V.'s counsel who is cherry-picking evidence, not the ALJ.

The only other argument that Waggoner makes is to point to the fact that P.O.V. required intensive therapy. She says that if P.O.V.'s functioning in this domain were not worse than what the ALJ said it was, then P.O.V. would not have required the long periods of intensive speech and language therapy. But that doesn't follow. Just because

P.O.V. had therapy doesn't necessarily prove that her impairments were marked prior to that time.

Based on all of the evidence, I do not agree with Waggoner that the ALJ focused only on peak levels of improvement in finding that P.O.V. had a less than marked limitation in the Interacting and Relating with Others functional domain. It is clear to me that the ALJ considered evidence from a wide-ranging span of time – as early as 2013 and as late as the date of the hearing – in her reaching her conclusion. Much of the evidence considered by the ALJ is from the same time period that Waggoner says P.O.V. was suffering from a marked limitation. The ALJ did not err but instead chose to credit the consultative examiner's opinion, as well as P.O.V. and her parents' own reports of her abilities. Waggoner is unable to point to any evidence that the ALJ ignored that would support a finding of marked limitation in this domain, so there is no merit to her argument that the ALJ cherry-picked evidence. Rather, substantial evidence supports the ALJ's findings.

Waggoner also briefly argues that the disability inquiry is not an "all or nothing" proposition, so P.O.V. may be entitled to receive benefits for a specific period of time, even if she is not entitled to continuing benefits. This is certainly true, but the case she cites in support, *Lovett v. Astrue*, 2008 WL 62507, at *3 (W.D. Ark. 2008), is inapposite. This is because in that case the ALJ erred by ignoring the claimant's various surgical procedures over a 17-month period and the absences they could cause.

In this case, Waggoner has failed to show that the ALJ ignored *any* evidence during the relevant period. Instead, she simply asserts that P.O.V. must have had a marked limitation and then invites the court to go hunting for the evidence to support that assertion. The only thing she points me to is the one piece of evidence Waggoner claims that the ALJ ignored – the sentence by the speech pathologist in the educational evaluation – that was plucked out of context.

Without identifying any specific pieces of evidence, Waggoner would have me sift through the record to find whatever snippets I can that might lend support to her position that she suffers from marked limitations. But it is not the Court's obligation to scour the record in search of such evidence. *Murphy v. Astrue*, 2011 WL 4036136, at *9 (N.D. Ill. Sept. 12, 2011); *see also Hermann v. Astrue*, 2010 WL 356233, at *13 (N.D. Ill. Feb. 1, 2010) (citing *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005)). Each party bears the burden of pointing out specific portions of the evidence in the Court's possession to support her case. *Herman*, 2010 WL 356233, at *13 (citing *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1135 (7th Cir. 1997)). Waggoner's brief falls short.

Waggoner also claims that the ALJ erred in her evaluation of the evidence in the "Moving about and Manipulation of Objects" functional domain. But even if Waggoner is correct that the ALJ made a mistake in this particular functional domain, it would be besides the point. That's because a child is disabled only if she has a marked limitation in at least two functional domains or an extreme limitation in one. Waggoner doesn't argue that P.O.V. had an extreme limitation in any domain, and the ALJ did not find

10

any other domain presented a marked limitation. So even if I agreed that the ALJ had made a mistake in the Moving about and Manipulating Objects domain, Waggoner would have only one marked limitation, which does not support a finding of disabled. For that reason, discussion of this domain is not necessary.

Because substantial evidence supports the ALJ's conclusions, the decision must be affirmed.

**Conclusion**

The final decision of the Commissioner of Social Security is AFFIRMED.

The Clerk shall enter judgment in favor of defendant and against plaintiff accordingly.

**SO ORDERED**.

ENTERED: September 10, 2018.

s/ Philip P. Simon<br>
**PHILIP P. SIMON, JUDGE**<br>
**UNITED STATES DISTRICT COURT**